The Full Commission has reviewed the Order on Remand of February 16, 2001 based on the record of the proceedings before Deputy Commissioner Bost, the briefs on appeal and the Motion for Reconsideration. The Motion for Reconsideration is ALLOWED, as follows.
 ***********
The Full Commission has reviewed the prior Opinion and Award of Deputy Commissioner William C. Bost, filed on December 9, 1996, based on the record of the proceedings before Deputy Commissioner Bost and the briefs on appeal, after remand and on reconsideration. The Full Commission received no additional witness testimony and each party waived oral argument before the panel. The appealing party has shown good ground to reconsider the evidence. Upon reconsideration of the entire record of evidence, the Full Commission reverses the Deputy Commissioners Opinion and Award and enters the following Opinion and Award.
 ***********
On reconsideration the Full Commission has determined that there is sufficient evidence of record for it to make determinations (1) as to whether or not suitable work was available and offered to plaintiff prior to or on August 19, 1995 and (2) what plaintiffs average weekly wage was at the time of her injury.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties through a Pre-Trial Agreement and at the hearing on November 7, 1996 as:
 STIPULATIONS
1. The parties are properly before the Commission and the Commission has jurisdiction of the parties and of the subject matter.
2. All parties have been correctly designated and there is no question as to misjoinder or non joinder of parties.
3. Plaintiffs average weekly wage is to be determined by the employment documents submitted and stipulated into evidence.
4. The parties stipulated that the medical records from Occupational Health Center, High Point Regional Hospital, Med Source, High Point Orthopaedic Sports Medicine, Inc., Bray-Maness Physical Therapy, Inc., and all Industrial Commission records and employment records could be stipulated and received into evidence.
5. The issues to be resolved are:
 (a) Did plaintiff suffer a compensable injury by accident arising out of and in the course of her employment on or about 19 June 1995 on the premises of the defendant, Cardinal Container Services?
 (b) If so, to what amount of workers compensation benefits is plaintiff entitled?
 ***********
In consideration of all of the competent evidence of record and the reasonable inferences flowing therefrom, the Full Commission makes the additional following:
 FINDINGS OF FACT
1. At the time of the hearing on November 7, 1996, plaintiff was a 36, had a GED and took additional classes to obtain a CNA. Prior to her employment with defendant-employer, plaintiff had worked for a variety of employers including: Hilltop Living Center, Golden Age Nursing Home and Lexington Health Care Facility.
2. Plaintiff began her employment with defendant-employer on May 23, 1995. Plaintiff was hired to work forty hours a week at $5.50 per hour. Plaintiff worked for defendant-employer from May 23, 1995 until June 19, 1995, earning a total of $655.38. Plaintiffs average weekly wage at the time of her injury was $220.00 and her corresponding compensation rate was $146.67.
3. Plaintiff performed various jobs in her employment with defendant-employer. Plaintiffs duties included the washing and drying of drums, placing gaskets on the rings for lids and then helping load the drums onto trucks. Plaintiff would use a ramp with rollers on it to move the drums from one location to another. Plaintiff also worked on a shredding machine.
4. On May 31, 1995, plaintiff was using a ramp when she stepped onto one of its rollers. Her feet came out from under her and plaintiff fell to the floor, injuring her back. As the result of this injury, plaintiff was out of work for a short period, returning after two or three days. After her return to work, plaintiff did not experience further symptoms as the result of this injury and did not file a claim seeking workers compensation benefits. Plaintiffs work related injury of May 31, 1995 is not the subject of the claim now before the Industrial Commission.
5. While working for defendant-employer on June 19, 1995, plaintiff stepped into a depression in the floor at the lower end of a ramp she was using. When plaintiff stepped into this depression in the floor, her left ankle turned and was injured. Despite the pain she was experiencing, plaintiff continued to work on the day of her injury and completed her shift.
6. Plaintiff testified that she informed Mr. Jeff Rominger, her supervisor about her injury on the day it occurred and that she informed a maintenance worker that the depression in the floor needed repair.
7. On the date of her ankle injury, plaintiff was wearing steel-toed boots. After work that evening, plaintiff removed her work boot and her ankle began to swell. Plaintiff testified that she attempted to contact Mr. Rominger to inform him of the swelling, but was unsuccessful in reaching him. The next day, on June 20, 1995, plaintiff sought medical treatment for her ankle injury.
8. The next day, on June 20, 1995, plaintiff was examined at the Occupational Health Center in High Point, North Carolina. Office notes of that date indicate that plaintiff reported that she injured her left ankle at work after stepping into a depression in the floor. The examination revealed that plaintiff was experiencing numbness in her toes on her left foot and had sustained a join effusion in her left ankle. Plaintiff was prescribed medication, given an air cast and was removed from work until such time as she could be evaluated by an orthopedist.
9. Plaintiff was then referred to High Point Orthopaedic Sports Medicine, Inc., where she was initially examined on June 23, 1995. According to an office report of that date, plaintiff again gave a history of injuring her left ankle at work when she stepped into a depression in the floor. Plaintiffs examination revealed swelling on the medial and lateral aspects of her ankle and acute tenderness over the proximal fibular shaft. Dr. David B. Ross diagnosed plaintiff as having sustained a left ankle grade II sprain. Dr. Ross advised plaintiff to continue using the air cast, to elevate her ankle and continued her removal from work.
10. Dr. Ross next examined plaintiff on June 29, 1995, finding continued tenderness, swelling and pain associated with plaintiff bearing weight on her ankle. Plaintiff was given a leg orthotic, which also covers the foot and ankle, for added comfort. As of that date, plaintiff was unable to return to work.
11. On July 11, 1995, plaintiff was again examined by Dr. Ross, who noted that she had not responded to restricted movement and protective immobilization. Dr. Ross then referred plaintiff to Bray Maness Physical therapy for work on her ankle. Plaintiff was advised to continue using the leg orthotic and to remain out of work.
12. After attending physical therapy for a short period, plaintiff ended the sessions because she was unsure who would pay for them after defendants denied her claim.
13. In his office notes of August 18, 1995, Dr. Ross indicated that plaintiff had been responding to the physical therapy that he had prescribed. Because of this improvement, Dr. Ross released plaintiff to return to sedentary work that would involve constant or frequent sitting beginning on August 19, 1995.
14. The Full Commission finds that Ronnie Hammonds testimony regarding plaintiffs back and ankle injuries should be given little weight.
15. Following her release to return to sedentary work, plaintiff unsuccessfully attempted to find work or to otherwise obtain assistance through North Carolina Vocational Rehabilitation, Davidson County Employment and Training, and from the Employment Security Commission. Plaintiff later found work as a part time baby-sitter, earning $30.00 per week.
16. Having found plaintiffs testimony to be credible, the Full Commission finds that the incident at work on June 19, 1995 was an interruption of plaintiffs normal work routine which introduced unusual conditions likely to result in unexpected consequences and, therefore, constituted an injury by accident arising out of and in the course of her employment with defendant-employer.
17. As the result of her June 19, 1995 injury by accident, plaintiff was incapable of earning wages in her former position with defendant-employer or in any other position from June 20, 1995 through August 19, 1995.
18. Defendant-employer did not offer suitable work to plaintiff. Plaintiff was told there wasn't any sedentary work available, not requiring what she needed as far as elevating her ankle and sitting and doing a job at the same time. Plaintiffs testimony to this effect was corroborated by the testimony of Steven Ray Berrier, who was plant personnel director of defendant-employer at the time of the injury:
 And then when I talked to her on the phone and she told me that, I said, Well, you know, we have work available. And I think I recall that she said that she had to be seated and have her — have her foot elevated above her heart, I think, to prevent swelling. I m not sure about that. And the picture in my mind was, well, that puts you on your back when you do that, and I don't have any jobs on your back.
The lack of suitable work is also corroborated by the August 18, 1995, medical records of Dr. David B. Ross to the effect:
 Certainly Ms. Hollingsworth can be performing a sedentary type job or one that allow her to sit frequently, but apparently this is not available.
19. Plaintiff earned $5.50 per hour for a 40-hour week. Her average weekly wage was $220.00 and her compensation rate was $146.67.
20. Defendant-employers testimony to the effect that all new hires were told that sit-down work was available if needed in the event of an injury does not constitute offer of suitable employment. Neither does testimony to the effect that plaintiff was told, "We have sit-down jobs. If you can get to the plant, we can get you a job. We have a job. Defendant-employer never offered plaintiff any specific job that met the work restrictions imposed by her physician.
21. The Full Commission resolves conflicting testimony concerning the injury by accident of plaintiff on June 19, 1995 during the course and scope of employment in favor of plaintiff. Plaintiff indeed did suffer a compensable injury by accident under those circumstances.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On June 19, 1995 plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer resulting in an injury to her ankle. N.C. Gen. Stat. 97-2(6).
2. As the result of her injury by accident, plaintiff is entitled to be paid by defendants temporary total disability compensation at her compensation rate for the period of June 20, 1995 through August 19, 1995. N.C. Gen. Stat. 97-29. This compensation having accrued shall be paid to plaintiff in a lump sum. Id.
3. As the result of her injury by accident, plaintiff is entitled to have defendants pay for all medical expenses incurred. N.C. Gen. Stat.97-25.
4. Plaintiffs average weekly wage at the time of her injury was $220.00 and her corresponding compensation rate was $146.67. N.C. Gen. Stat. 97-2(5).
5. The Full Commission concludes that there is insufficient evidence of record from which it can be determined whether or not plaintiff is entitled to additional benefits after August 19, 1995. N.C. Gen. Stat. 97-2et seq.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants shall pay plaintiff temporary total disability compensation at her compensation rate of $146.67 per week for the period of June 20, 1995 through August 19, 1995. This shall be paid in a lump sum, subject to the attorney fee set forth below. Defendants shall also pay to plaintiff interest at the rate of 8% per year on this compensation from the date of the hearing before the Deputy Commissioner until paid. All of the interest shall be paid to plaintiff.
2. Defendants shall pay for all medical expenses incurred by plaintiff as the result of her June 19, 1995 injury by accident.
3. A reasonable attorneys fee of twenty-five percent (25%) of the compensation awarded herein is awarded to counsel for plaintiff, which shall be deducted from the amount having accrued and paid directly to counsel for plaintiff. Counsel shall not be paid any fee with respect to the interest.
4. This matter is ordered removed from the Deputy Commissioner hearing docket.
5. Defendants shall pay the costs.
This 12th day of March 2001.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER